Thank you, Your Honor. The first thing that I'd like to address with the panel this morning is that the trial court did abuse its discretion in granting the U.S. trustees motion to amend that it ultimately granted in mid-2019 that allowed all of the claims that ultimately proceeded to trial. I know the court has reviewed the record and is familiar with the timeline, but some of it is critical to what occurred here. It's uncontested that the original complaint was timely filed. We have no challenge to that whatsoever. And it's uncontested that that complaint was settled with the Chapter 7 trustee and that the U.S. trustees office took over in 2017 as the plaintiff in that adversary proceeding. And it is also uncontested that it was not until mid- 2019 that the U.S. trustees office ended up moving to amend their complaint, at which point, and I also believe this is uncontested, that amendment would have been futile as time barred at that point unless the amendment satisfied the relation back test. So that's really what we're talking about here on this particular motion and the decision, which involves two rules. The interaction of those two is throughout our briefing and throughout the U.S. trustees response briefing. And that's the interaction between bankruptcy rule 4004, which sets the 60-day time frame for objecting to discharge in 727 actions. And that is to be strictly construed. We provided case law authority in my head is 4004, but it's a different section. It's 4004B2, which says that when you discover potentially, potential non-dischargeability or things that could rise to non-dischargeability after the petition date, you can petition to amend that deadline. So it is strictly construed as to anything you learn or should that occur pre-petition But as to post-petition discoveries, isn't it a more lenient statute and isn't that something that in sort of assessing error here we should keep in consideration? Well, you're honored to answer that question and I would have probably touched on it shortly. No problem at all. I appreciate the court bringing it to my attention as a question. But that section of discovered, but that would have been pre-petition rights or actual things that were owned as far as property of the estate. So it effectively ties into what I was going to be arguing momentarily, which is, is there an obligation in a Chapter 7 case post-petition to go back and amend schedules to disclose post-petition earnings, post-petition expenses, things like that. Once you get down the road, you make a determination at the time of filing. This is what the numbers are. This is what things are. And then reality happens and two years plus down the road whenever we're looking at a motion to amend, the question is, was that stuff stuff that would have been available if it had been looked at timely or not? That's the distinction. Yes, you're right. My question is, wasn't that wasn't what the judge found that post-petition earnings need to be disclosed. The judge found that the issue was the veracity of the information contained in the schedules. And so doesn't that indicate that the question is not in hindsight, should you have done it better? But should you have done it better in the first instance? And if you discovered that you really made a big mistake, shouldn't you have amended it? That's a different question. You're trying to frame it as I have to tell you whenever I have a change in my post-petition income. And that's not really the issue. The issue is veracity of the schedules. And upon learning of, possibly learning of new information, should you have amended it to be more accurate? Here, they amended it, but they amended it down. I mean, isn't that compounding the error? I would contend that it is not, Your Honor, and that that is not what was happening here. And Your Honors, I, the portion where I'm, I am addressing a lot of this, is there an obligation to go back and amend and or is it a veracity type question? Comes into more about the findings of facts that were ultimately entered related to the 727 actions, as opposed to this motion to amend. And the motion to amend and if I think that I think they're related and I think if you're about to tell me they are, I'm going to agree with you. But I'm going to go back to Judge Brand's point, which is what we're trying to get here is an accurate picture of the debtor's financial condition. It's one thing to say what's Blackacre worth on day one. It's not going to be worth two times that on day two. But if we find out that, in fact, the earnings were quite different than what were represented on day one, we may not know that for a period of months. You know, it may take a period of months to show why that was not accurate. And I mean, I guess I'm wondering if the rule is you can't have more than, you know, you have to file your your non-dischargeability or 727 claim on the last day. But you find out something that you really couldn't have been expected to understand or know until months later that that's just too bad. How do you how do you fix that problem? I would fix that problem by saying, Your Honor, this is not information that would not have been available at the time of filing that... And why didn't the debtor say it? The debtor disclosed an income amount on Schedule I. Both debtors did. One of the debtors was unemployed at the time. The other one listed an income based on his base salary. At that moment, right? In that month? That is correct. It may not have been representative of other months, right? That was not representative. You're correct, Your Honor, and the reason that I haven't started with that is that I do recognize that there are multiple ways that those numbers can be determined. There are multiple numbers of months that can be used. And a lot of that goes back to if there are multiple choices in front of the trial court, that turns on more credibility and what the judge believed than anything else. So that's why I'm not focusing on that. Which we really cannot challenge, right? I mean, we have to take that into consideration. Yeah, I am not suggesting that this court revisit or change anything as far as any credibility determinations or what the court ultimately... I have another question. Let's say you've got a debtor, and in November, they got a big paycheck of $1,000. And in December, they got a $10 paycheck, and they filed bankruptcy. And in January, they're expecting to get another $1,000. And they filed bankruptcy on December 15th. Is it okay for them to write in their schedules that their monthly income is $10? Because that seems to be what you're saying. And that is not the argument I'm trying to put forward, Your Honor. If that's how it's come across, then I apologize that it's been construed that way. What I'm trying to say is that in this situation, we had two debtors after a colossal business failure who brought all of their prior information, all of their prior pay stubs, all of everything to their bankruptcy attorney and said, This is where we're at. The bankruptcy attorney, it is uncontested, is the one who filled in that number on Schedule I initially. And I recognize that. That's a separate legal question that I will touch on if there is time as well. But I am suggesting that if there is a right at the time of filing only to a certain amount of money coming in, and here that would be the base salary, everything that is determined and called a bonus in this case is not the traditional bonus as used of the company did well. We're going to throw out a bunch of money based on our performance to all our players. This is about earned money for extra shifts that are picked up and worked if they are available. That is the only thing that changes the number from the base amount on any given month. And in this scenario, and again, I'm trying to avoid the testimony aspects just because I know that the standard of review is very barring on those. But the reality here is if there was no right, if Sajid Ravazia, for example, had no right as of the day he filed his bankruptcy petition to say I'm going to be able to continue working extra shifts, I'm going to be able to do it because of family circumstances, etc. If he doesn't have the ability to do that, his wife is leaving to a war zone, they have staffed up the department right before this, his monthly averages have been trending down. If he were to say it at that point and say here's what I expect to move forward with or something like that, including a bunch of extra shifts, but that he doesn't have a right to, then he would be doing more than would be required of a Chapter 7 debtor. And that is forecasting an expectancy that there's no legal right to yet. Can I ask you a different question? Because we focused exclusively on the income. There seem to be three big buckets of potential problem. One is the income disclosures, the other is the expense disclosures and the tax refund. Could you talk about the failure to accurately lay out what the judge found to be an inaccuracy in projecting or discussing past expenses and the fact that they knew, apparently there's evidence in the record that they knew they were going to get some kind of tax refund, yet they listed it at zero. They actually, my recollection, your honor, I'm going to answer that in a couple of parts. As to the tax refund, number one, I don't believe the court made any finding ultimately related to that tax return. Didn't he say there's other stuff on focusing on this and isn't that in the record? It is in the record and it was discussed at trial. Absolutely, your honor. However, that being said, to your honor's question about the expenses, we've provided the authority in RETS that as far as expenses go, that even if there is an omission or a misstatement, that it's got to detrimentally affect the administration of the estate for it to matter. The language, even as an overstatement of expense, won't be considered material for purposes of a false oath if it doesn't impact the fact that a debtor's budget was underwater at the time. Here, it was absolutely underwater at all times. We've cited the Robinson-Maldonado case out of the Central District for that proposition. Then also the Dranachak case, which is out of circuit, but also speaks to that as well. Our positional argument with that is that if an overstatement of expenses, or if an understatement would not impact the bankruptcy of state or prejudice creditors, or if an overstatement wouldn't, an understatement certainly can't prejudice creditors. It shouldn't be used to result in a denial of discharge. So that's our positional argument on the expense piece, your honor. But what we've got here, realistically, is whenever they filled out Schedule J, they filled in the lines for all the household expenses. They knew what was there, but there were two big areas outside of that, that ended up costing them money during the following year. One of which was Deborah Rovazia's efforts to try to find locum work to be able to get enough deliveries of live babies for her OB status, so that she could be brought in, for the time to be able to qualify for Medicare, again, eligibility. All of these things that she's doing are costing money, applying everywhere with each state to be potentially able to practice there, internationally, traveling to try to find these jobs. That's one. And then the other is, there is evidence in the record that over the course of that year, they had tried to resolve some of the business problems that they had had from the failed business using payments through their credit cards. And that's really what we're talking about on the reason the expenses varied here. And again, I'm not asking the court to weigh credibility, but that's in response to the court's question. All right. Well, you've got a minute. So do you want to reserve it or? With that, I'm going to reserve and I will revisit it following Mr. Byer's argument. Thank you. All right. Thank you. All right. Mr. Byer. Hello, may it please the court. Andrew Byer for the Appalachian United States trustee, Gregory Garvin. I think the court has identified a lot of the issues in their questioning. And the real principle here is that debtors are expected to give full and accurate disclosures whenever they file their statements or schedules or testify in 341 meetings. And I think a lot of their arguments are technical arguments that are counter to those sort of essential foundational principles of disclosure that are the foundation of the bankruptcy system. And I think the quote that this from Boroff, which is a first circuit case, but I know this court often cites it, I think is essentially runs counter to all their arguments. Neither the trustee nor the creditor should be required to engage in a laborious tug of war to drag the simple truth into the glare of daylight. And I do think that is sort of overall what happened here. Well, why was there a delay in the complaint? No, it was because the information was hard to come by from the Rabazia's. There was delays. I know she was out of the country. There was other issues. And in some of the statements, as Judge Taylor mentioned, you know, they couldn't have been discovered. Her Mrs. Rabazia's testimony or Ms. Rabazia's testimony regarding her job prospects at 341 meeting, that's one of the basis for the denial of discharge. That's one of the false oaths. It wasn't until further discovery and documents that were turned over in discovery, the deposition of her father and of her father, where he said she knew she was coming back after that and she'd have a job in Canada and she wanted to rent a ski condo. Let me ask you about the timing issue here. Because, okay, you've got a complaint that says only, you know, it's focused on this condo issue, which is settled. So that's out of the complaint. You've got what's left in the complaint. And then you come back and ask to amend the complaint. Why didn't you concurrently ask for an extension of time to bring an action under, you know, a non-dischargeability action? That was available to you under 4004 B-2. Yeah, that's a good question. And I think that may have been a better... Oh, dear. Somebody's frozen. Yeah. Fire's frozen. Yeah. I didn't think the question was that bad. Let's hold time. Stop the clock. Thank you. Callie, can we figure out what's going on here? Oh, he's back, maybe. Sorry, I was answering and then the video froze. I don't know. Yes. So I didn't think my question was that terrifying. So go ahead. You said restart the clock, right? We'll restart the clock now. Okay, your question was, why didn't we wait for an extension under 727, 404 B-2? And I was trying to answer, you know, at that point, when we first took over the complaint, we wouldn't immediately move under that rule because we weren't... We're still investigating the claims. But I think that does sort of cover the gap of what seems to be the case. The problem here is rule 727 says any false statement in connection with the case, that doesn't mean in the first 60 days of the case when the complaint must be filed. It means any time during the case. So if there's false statements made later in the case, it can't be that you can't amend to sort of add those to the complaint. And I think that's what sort of animated the court's decision here. The bankruptcy court did struggle with it and say, it's a close call, but I'm going to allow the amendment. And I believe that was fully within his discretion. And he did find that the facts were close enough, they're closely related enough that he's going to allow the amendment. I mean, that is consistent with the overarching principles of liberality of amendment in the Ninth Circuit and in this court. And the sort of statements this court has made that in particular amendments in denial of discharge cases should be allowed because of the short time frame. And I think this case is a perfect example of that sort of idea. I'd like to move on to sort of the substance of the case where the false statements that were actually made. The bankruptcy court found after a three-day trial, multiple false statements that warranted denial of discharge. The first was Mr. Ravazzi's income. And I agree with Judge Brandt in her comments about... Oh boy. Stop the clock. Hopefully, he'll come back. Yeah. That's not the law that I'm aware of. You know, if he knew, which this is what the bankruptcy court found, he knew at the time he filed his schedules, he was going to make more money than that. The evidence was his prior income was clearly higher than that. He'd always worked this over time and gotten way more than his hundreds of thousands more than his base salary. And then that turned out to be true in the magnitude of hundreds of thousands more in the year 2017. We're not saying he should have known that 100% accurately, that he had to predict it would be exactly $660,000. What we're saying is he knew it was going to be more than what he stated, or they both knew that. In fact, Mrs. Ravazzi had testified when she reviewed the schedules, she thought it looked low. And she didn't do anything about it. She thought it was close enough. So all of those sort of facts sort of suggest fraudulent intent here. And then the further fact that they amended and tried to continue with the false statements is another factor in showing fraudulent intent, that they didn't amend to correct the underreported income. They doubled down and amended to restate the underreported income, knowing these allegations were now live. And then the statements Mrs. Ravazzi made, I think equally, the finding on that is not clearly erroneous. The bankers here looked at everything. She made the statements at the 341 meeting that she was not going to be employed for some time. She was not terribly employable. I think it was the quote. It obviously left the impression with the trustee at the 341 meeting that there was no income there coming in the foreseeable future. But at the same time... I mean, she didn't have a job. Is that really the same type of analysis as for Mr. Ravazzi who can put in a number and say, you know, my salary is $20,000. And you could say objectively, no, it should have been more. Here, Mrs. Ravazzi was, I don't have a job. So my income is zero. I don't know when I'm going to get a job. Probably not for some time. Is that really enough? Oh, dear. We keep losing it. Stop the clock. I know, stop the clock. I'm just amazed at the... This is the United States. You probably didn't get the benefit of my whole question. No. I'm sorry, Judge Brandt. The video froze again for about 10 seconds. I think you were asking about... You need to talk to the United States trustee about this because we've had arguments with multiple... And this is the worst connectivity we've had, period. So, I mean, we're not upset. I'm just saying they should do better by you. He's frozen again. Stop. Oh, dear. Stop the clock. I'm sorry about this, Judge. This is definitely an issue on the participant's end, though. Yeah, I apologize, Judge. I'm not a technical person, but your point is well taken. And I will raise that with our IT department. This isn't just my argument. It could happen in other trustee arguments. So, I will read up with my... And understand the frustration. Tell them I've had pro se's and basements who have done better. And I'm not exaggerating. Right. Just really briefly, is the argument the same for Mrs. Ravasia who was out of work? That's my question. She didn't know when she was going to be able to work. Maybe she had a good idea that it would be soon. But is that the same as Mr. Ravasia? I think it's the same analysis. I think it's a little bit more inferential in the evidence of whether that was false than she knew it at the time. But it's sort of... The bankruptcy court did find her statement in the schedule was not false. That she had zero income. That wasn't the issue. The issue was at the 341 meeting, she... That she wasn't going to have a job anytime soon. And she knew better than that. She didn't give all the information about her prior... In December, she had interviewed with a place in Canada. She thought it would come through. But her credentials didn't come through in time. The fact that she had that interview and that was very close to getting a job there was not revealed. And then at the same time of her 341... And that by itself would have been material in your view? Yes. Okay. That she... How do you enter that on the schedule? You just put that in the things might change place? Yes. She put it in schedules that she was looking for work. So what else did she need to say to make it... That she was close to... When she was asked at 341 meeting how much she expected through the end of the year, how much these jobs might pay, she said she didn't know. She didn't really expect to have a job. I don't know if it was specifically asked that way. But that was the sort of overarching discussion at the 341 meeting was detailed questions about her job prospects. Okay. And she couldn't say how much one of these jobs might pay, whether she would have locum work. It just sounded like it's far off and it's sort of... No way can I tell you when that will be. But in fact, she did have information that it would be closer to... In the middle of the year when she got back from her... Can I ask you to comment on getting off the income for a minute? Do my colleagues want to hear more about the income? Okay. Expenses and the tax refund. The tax refund, he correctly says the judge kind of maybe locked it into... There's lots of other stuff, but didn't really talk about it. Can we on appeal look at that? Question number one. And question number two, you take a position too on the expense statement saying that they were incorrect and caused harm. Can you talk about that? Yeah. First, taking your first question. Yes, I believe this court can affirm for any reason supported by the record. And there's certainly ample support in the record. Obviously, the judge, the bankruptcy judge did not make a finding on the tax return issue. But it certainly is something you can consider in the other issues and the overall... How many misstatements and fraudulent false statements were in this case as far as weighing the inference to make on intent. I believe this court can, does have the authority to go ahead and make findings on that itself, given the record here is clear. And I'll briefly say you can also remand for the judge to determine that issue as a first instance. As far as the expenses, the court found, the bankruptcy court below found that that was material. And it sort of goes with the income. If they had properly reported their expenses, the trustee would know how are they paying for this level of lifestyle. That suggests their income is underreported. So it's material because it goes to their overall financial health and condition. And I think materiality, my understanding from the case law is a fairly low bar. If the trustee says, you know, this would have affected how I handled the case, that it was material. And so I think that... Believably says it would have affected how I handled the case. Sure. Obviously the bankruptcy court believed that testimony and found it was material. And that was another basis for denying the discharge. So I don't think under the testimony that that's clearly erroneous. The defense offered by your worthy opponent is, well, if we were underwater all the time, it's not material. To which one response might be, well, you wouldn't have been. Had we known about all this other income, you would have been in an 11 with a trustee and you wouldn't have been doing all these things that cause you to be underwater. I'm assuming that's one response you would have. And I guess the question is, to Judge Taylor's point, at what point is this speculation? And at what point is it, well, no, we really would have done something different and therefore it's material. At what point is it speculation? I mean, I guess... Let's start with part one. Part one is, Appellant's counsel says, none of this matters because we were underwater the whole time. It's not just that more expenses don't count. It's, if I'm understanding him, it's that there was never a surplus. So therefore, this doesn't change anything. So even if you knew about the additional income, it wouldn't have mattered. Now, you may disagree with that factually, or you may say, well, that really isn't the point. Because the point is, had we known how you were really running this case, then other things would have happened. Yes, I mean, the actual expenses were extravagant. So if those were accurately reported, I mean, you would say, those aren't justified, so you need to adjust your spending. They weren't accurately reported. So that would have changed how the analysis was done with respect to, should this be converted, right? So it's always a little bit of what we would have done had we known. But I think that's how you view materiality. It's not outrageous. It's not pure speculation to think that we would have wanted to look at those expenses and get more detail on whether those were necessary expenses or valid expenses. And I think in our complaint, that was sort of, we're saying these weren't accurately reported, but even if they, we're not saying yet that these were valid, even if they weren't accurately reported. And I think, let me see if there's anything else I want to address, unless you all have any other questions. And again, I apologize for the stutters. It's obviously not your fault, but it's something that should be remedied. Absolutely, Your Honor. So no, I don't have anything else. All right. If you guys don't have any other questions, I very much appreciate your time and I ask you to affirm. Thank you very much. All right, thank you very much. Thank you for your good argument. All right. I think you've got a whole minute. So. So, Your Honor, is what I would briefly, in response to some of the questions asked to my colleague. If you look at the tax return, I would ask this panel to look through the testimony of John Omland related to what those initial discussions actually were. Those were his personal notes taken whenever they had initially started talking about when ultimately they would be filing a tax return. I would point out to the court as well that ultimately that tax return was turned over to the trustee and has been administered as a part of the estate. So that's all I'll cover on that. On Deborah Revazia's income, if the court looks at findings of fact 37, 39, and 40, it will see quickly that every single determination of the court is based on income that was earned from a job that did not exist at the time of filing. With my last three seconds, I'll thank the court for its time. We would ask the court to reverse. All right. Thank you very much. Thank you both for your good arguments, notwithstanding some technical problems. You did just fine. And thank you very much, Mr. Dicicento. All right. We will endeavor to get you a decision back as soon as possible. And we will call the next matter.
judges: Taylor, Lafferty, Brand